

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00003-CR

---

ARTHUR TORREZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. DC-2022-CR-1436, Honorable William R. Eichman II, Presiding

---

July 5, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Arthur Torrez appeals from his conviction for aggravated assault with a deadly weapon. The victim was his infant daughter whom he dropped and then shook back and forth. On appeal, he argues the trial court erred 1) when it instructed the jury that his hands were a deadly weapon, 2) by denying his request for an instruction on the lesser-included offense of simple assault, and 3) by denying his motion for mistrial. We affirm.

### Background

Appellant and Maritza met in 2015. A year later, they moved in together and had a child. AT was born in December 2016. After Maritza's four-week maternity leave, she returned to work while appellant stayed home with the infant. One day in February 2017, appellant called Maritza and told her to return home. Apparently, AT needed to go to the hospital. When Maritza arrived, she found her daughter in an ambulance. The infant was taken to the hospital and underwent a craniotomy. Thereafter, investigation into the incident began.

During an interview with Detective Trent McNeme, appellant said he accidentally dropped the baby while preparing a bottle. Allegedly, she landed feet first but then hit her head on the floor. He added that he then shook the infant four or five times.

An attending physician testified at the ensuing trial. She diagnosed AT with abusive head trauma. Her injuries or symptoms included retinol hemorrhaging, "ligamentous strain" from the base of the skull to the cervical spine, seizures, and breathing difficulties. That resulted in the child's undergoing surgery to ameliorate swelling in her brain. So too was she placed on a ventilator to prevent further seizures.

Ultimately, the jury convicted appellant of the charged offense. Appellant then appealed.

### Issue One—Deadly Weapon Instruction

Through his first issue, appellant contends the trial court improperly instructed the jury that his hands were a deadly weapon. We overrule the issue.

Upon reading the charge, one encounters an instruction defining "deadly weapon." According to the court, the phrase meant "anything that in the manner of its use or

intended use is capable of causing death or serious bodily injury." Soon thereafter followed the application paragraph. Through it, the trial court informed the jury that "if" it found from the evidence beyond a reasonable doubt that appellant "did then and there, intentionally, knowingly, or recklessly cause serious bodily injury to [AT] by shaking or causing her to strike a hard surface, and the defendant did then and there use or exhibit a deadly weapon, to wit: the Defendant's hands . . . then you will find [appellant] guilty as charged in the indictment." This language tracked the applicable statutory language. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(17); 22.02(b)(1)(A).

Moreover, nowhere in the charge did the trial court inform the jury that hands were a deadly weapon. Rather, it simply defined the term and told the jury that "if" it found appellant's hands fell within the definition's scope it could convict him of the charged offense. Of course, the trial court also conditioned guilt upon the jury's finding evidence proving the remaining elements of aggravated assault. But, again, nowhere did the court say appellant's hands were deadly weapons.

As for appellant basing his argument on *Blanson v. State*, 107 S.W.3d 103 (Tex. App.—Texarkana 2003 no pet.), the opinion is inapposite. The *Blanson* trial court actually provided the directive missing here. It told the jury that "[a] knife is a deadly weapon." Telling the jury that a knife is a "deadly weapon" is far different than merely providing the definition of a "deadly weapon" and accompanying that definition with an instruction permitting conviction "if" appellant's hands were found to be deadly weapons. The former is wrong. The latter is not. To paraphrase language from *Davis-Grant v. State*, No. 03-20-00182-CR, 2021 Tex. App. LEXIS 8219 (Tex. App.—Austin Oct. 8, 2021, pet. ref'd) (mem. op., not designated for publication), "[i]n light of the preceding, we conclude that

3

the jury would have understood that it was required to determine if [appellant's hands were] a deadly weapon as that was defined in the jury charge when determining whether he was guilty of the offense . . . ." *Id.* at *18-19.

### Issue Two—Denial of Lesser-Included Offense Instruction

By his second issue, appellant argues the trial court should have submitted to the jury his requested lesser-included instruction for simple assault or simple assault family violence. We overrule the issue.

In determining whether the jury should be charged on a lesser offense, we apply a two-step analysis. *Segundo v. State*, 270 S.W.3d 79, 90-91 (Tex. Crim. App. 2008). We first decide if the offense is a lesser-included offense of the charged offense by comparing the elements of the greater offense, as pleaded in the indictment, with the elements of the lesser offense. *Id.* Second, we decide if there is some evidence in the record from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Id.* The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense. *Id.* And, as said in *Roy v. State*, 509 S.W.3d 315 (Tex. Crim. App. 2017), "[a]lthough little evidence is needed to trigger an instruction, the relevant evidence must **affirmatively** 'raise[] the lesser-included offense and rebut[] or negate[] an element of the greater offense.'" *Id.* at 317 (quoting *Cavazos v. State*, 382 S.W.3d 377 (Tex. Crim. App. 2012)).

The parties do not dispute that the requested charge was for a lesser-included offense of the charge for which appellant was indicted. So, our focus lies on the second part of the applicable test. And, the evidence purportedly entitling appellant to the instruction fell within two categories. We address each in turn.

4

The first category encompasses the long-term effects of the assault upon the child. It consisted of evidence that she recovered over the ensuing years with minimal, if any, impairment. According to appellant, her so recovering was evidence indicating she only suffered bodily injury, as opposed to serious bodily injury. This distinction is of import.

While aggravated assault, as charged here, required proof of serious bodily injury, TEX. PENAL CODE ANN. § 22.02(a)(1), simple assault or simple assault, family violence merely required proof of "bodily injury." *Id.* at § 22.01(a)(1). "Bodily injury" consists of "physical pain, illness, or any impairment of physical condition," TEX. PENAL CODE ANN. § 1.07(a)(8), while "serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46). Because the victim recovered, i.e., suffered no permanent disfigurement, loss, or impairment, she suffered only bodily injury, according to appellant.

In so proposing though, appellant ignored the several ways to prove serious bodily injury; he ignored the avenue involving proof of injuries that "create[] a substantial risk of death." Evidence that the child recovered did not negate that path. Nor did appellant explain how it did. Again, the child suffered from brain swelling, retinal bleeding, seizures, and spinal cord strain. She underwent head surgery to relieve pressure on her brain. So too did she necessitate breathing assistance. Those circumstances posed to the child a substantial risk of death, according to the testifying medical expert. Thus, the evidence cited us by appellant did not negate an element to the greater offense but, at best, only addressed one of several charged ways the State proved that greater element.

The second category concerns appellant's mens rea. Allegedly, his conduct was merely accidental or negligence as opposed to intentional, knowing, or reckless. And, the evidence of same purportedly came from AT's mother. She purportedly testified that "she did not believe Appellant could intentionally hurt [AT]" Upon looking at the record excerpt to which we were cited, though, the mother did not say that. Instead, she indicated that she had "a hard time believing" appellant did something to the child. *Her* having "a hard time believing" he injured his offspring describes *her* mindset, not that of appellant. It is no evidence of what appellant thought or intended at the time of the assault and, therefore, constitutes no affirmative evidence negating the requisite mens rea.

To that, we also note the trial court's definition of the requisite mens rea. It included three categories of mindset, that is, intentional, knowing, and reckless. Assuming *arguendo* mother's testimony could somehow be read as suggesting appellant did not act "intentionally," as posited by appellant, that left knowing and reckless. In other words, he could still be convicted of aggravated assault even if his acts were not intentional. So, again, the evidence cited fell short of negating an element of the greater offense.

### Issue Three—Denial of Motion for Mistrial

Lastly, appellant contends the trial court erred in denying his motion for mistrial. He so moved during closing arguments and immediately after the prosecutor stated, "[f]olks, by the grace of God, [AT] can't come into this courtroom and tell you what happened to her that day. The defendant is the only one that could do that . . . ." That comment led defense counsel to object, which objection the trial court sustained. The court also instructed the jury to disregard the prosecutor's comment but denied the request for a mistrial. We overrule the issue.

6

A mistrial is an extreme remedy, sparingly used for "a narrow class of highly prejudicial and incurable errors" committed during the trial process. *Herrada v. State*, No. 07-22-00374-CR, 2023 Tex. App. LEXIS 8973, at *12-13 (Tex. App.—Amarillo Nov. 30, 2023, pet. ref'd) (mem. op., not designated for publication). Thus, a trial court may grant mistrial only in those instances where it is apparent from the record that an objectionable event occurred that is so inflammatory that curative instructions would most likely be unsuccessful in preventing the jury from being unfairly prejudiced against the defendant. *Id.* Finally, the denial of a motion for mistrial is reviewed for abuse of discretion. *Id.* And, in assessing if such an abuse occurred, we generally consider 1) the severity of the misconduct, 2) curative measures undertaken, if any, and 3) the certainty of conviction absent the conduct. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

Here, the comment made by the prosecutor during closing argument may certainly be construed as an impermissible direct comment on the defendant's failure to testify. *See Lockett v. State*, No. 01-22-00302-CR, 2023 Tex. App. LEXIS 5034, at *8 (Tex. App.—Houston [1st Dist.] July 13, 2023, pet. ref'd) (mem. op., not designated for publication) ("[t]he State's comment on a defendant's failure to testify violates the United States and Texas Constitutions, and statutory law"). Yet, it was fleeting. Moreover, its utterance was followed by a prompt instruction to disregard it; such generally cures potential harm arising from it. *Lockett*, 2023 Tex. App. LEXIS 5034, at *10. Lastly, the evidence of appellant's guilt was not weak. He admitted to shaking the baby and described how the child's head flopped "back and forth." And, we previously mentioned

7

the extent of the baby's ensuing injuries. When combined, the *Mosely* factors weigh in favor of finding no abused discretion when denying mistrial.

Yet, our disposition of the third issue is not an invitation to the State to interject reference to a defendant's silence. Such has been prohibited for so long a time it is difficult to understand why a prosecutor still does it. Time has come to proceed cautiously and stop the practice.

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

Do not publish.